## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT (F/K/A DEUTSCHE BANK AG); DEUTSCHE BANK SECURITIES INC.; CITIGROUP GLOBAL MARKETS LIMITED; CITIGROUP GLOBAL MARKETS INC.; RBC EUROPE LIMITED; RBC CAPITAL MARKETS LLC; HSBC BANK PLC; HSBC SECURITIES (USA) INC.; MORGAN STANLEY & CO. INTERNATIONAL PLC; and MORGAN STANLEY & CO. LLC,<br><br>                 Defendants. | Case No. 1:23-cv-05095<br><br>The Honorable John G. Koeltl |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR PRELIMINARY APPROVAL OF STIPULATION AND AGREEMENT
### OF SETTLEMENT WITH CITIGROUP GLOBAL MARKETS LIMITED, CITIGROUP
### GLOBAL MARKETS INC., HSBC BANK PLC, HSBC SECURITIES (USA) INC., RBC
### EUROPE LIMITED, RBC CAPITAL MARKETS, LLC, MORGAN STANLEY & CO.
### INTERNATIONAL PLC, AND MORGAN STANLEY & CO. LLC

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................1

PROCEDURAL BACKGROUND.........................................................................................2

ARGUMENT.........................................................................................................................5

I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
SETTLEMENT............................................................................................................5

    A.    The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))....................................6

    B.    The Settlement Is Substantively Fair ....................................................................7

        1.    The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1).................................................................................7

        2.    The Reaction of the Settlement Class (*Grinnell* Factor #2).......................9

        3.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor #3)..............................................................9

        4.    The Risks of Establishing Liability and Damages
(*Grinnell* Factors #4, 5) ........................................................................10

        5.    The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6).....12

        6.    Settling Defendants' Ability to Withstand a Greater Judgment
(*Grinnell* Factor #7)...............................................................................12

        7.    The Range of Reasonableness of the Settlement Fund in Light of
the Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, 9) ........................................................................13

    C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of
the Settlement .....................................................................................................14

        1.    Rule 23(e)(2)(A) – Plaintiff and Plaintiff's Counsel Have Adequately
Represented the Settlement Class ...........................................................14

        2.    Rule 23(e)(2)(C) – the Cooperation Provided by Settling Defendants
is Adequate, Taking into Account the Costs and Risks of Further
Litigation and All Other Relevant Factors................................................15

        3.    Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably
Relative to Each Other.............................................................................16

II.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED.....................17

    A.    The Settlement Class Meets the Requirements of Rule 23(a)..............................17

        1.    Class Members Are So Numerous that Joinder Is Impracticable .............17

        2.    There Are Questions of Law and Fact Common to All Class Members...17

　　　　3.　　Plaintiff's Claims Are Typical of Those of the Settlement Class .............18

　　　　4.　　The Settlement Class Is Fairly and Adequately Represented ..................19

　　B.　　The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................19

　　　　1.　　Common Questions of Law and Fact Predominate.................................19

　　　　2.　　A Class Action Is the Superior Method for Resolving This Case............20

　　C.　　The Court Should Appoint Plaintiff's Counsel as Counsel for the Settlement Class ........................................................................................................................21

III.　NOTICE TO THE SETTLEMENT CLASS...................................................................22

CONCLUSION.......................................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ........................................................................ 17, 21

*In re Amaranth Nat. Gas Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. 2010) ........................................................................ 18

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 21

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................ 9, 10

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ................................................................................. 6

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................................... 9

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 Civ. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ..................................... 12

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ............................................................................. 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-cv-2058-JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ..................................... 14

*Chhab v. Darden Rests., Inc.*,
  No. 11 Civ. 8345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016) .............................. 21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.,
  Inc.*, 209 F.3d 43 (2d Cir. 2000)........................................................................ 6

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................ 12

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ................................................................................ 19

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................ 21

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ........................................................................18

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) .............................................................................15

*Dial Corp. v. News Corp.*,
  314 F.R.D. 108 (S.D.N.Y. 2015) ......................................................................18

*In re Elec. Books Antitrust Litig.*,
  No. 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014)..................18, 19, 21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...........................16

*Garland v. Cohen & Krassner*,
  No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ..............12

*In re Glob. Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................9

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...............................................................16

*In re GSE Bonds Antitrust Litig.*,
  No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019).................6

*Guippone v. BH S&B Holdings LLC*,
  No. 09-CV-1029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016) ...............12

*Henry v. Little Mint, Inc.*,
  No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ................7

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
  733 F. Supp. 2d 997 (E.D. Wis. Aug. 16, 2010)................................................13

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12-3419, ECF No. 720 (S.D.N.Y. Nov. 10, 2016) .......................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018)................................................................17

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003).................................................................14

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................2

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................................6

*In re NASDAQ Market-Makers Antirust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ......................................................................20

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 8, 11

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10 CV 7493 (VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ..................9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ............................................................................16

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013), *reversed and vacated on other grounds*,
  827 F.3d 223 (2d Cir. 2016) ....................................................................... 8, 10

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (S.D.N.Y. 2019) ................................................................ 5, 9, 15

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) .................................................................... 19, 21

*In re Playmobil Antitrust Litig.*,
  35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..............................................................18

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
  584 F. Supp. 2d 697 (M.D. Pa. 2008) ..............................................................13

*In re Processed Egg Prods. Antitrust Litig.*,
  284 F.R.D. 278 (E.D. Pa. 2012).................................................................. 10, 13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011) ............................................................................17

*In re Sumitomo Copper Litig.*,
  182 F.R.D. 85 (S.D.N.Y. 1998) ......................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ........................................................................................19

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ............................................................................19

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
  257 F.3d 256 (2d Cir. 2001) ..............................................................................8

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) ...................................................................................20

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .........................8, 12

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) ....................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................................14, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................................12

*Wallace v. IntraLinks*,
    302 F.R.D. 310 (S.D.N.Y. 2014) ................................................................................17

*Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*,
    No. C06-00089, ECF No. 43 (W.D. Wash. Sept. 22, 2006) ...........................................13

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ..........................9

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) .............................11

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    66 F. Supp. 3d 477 (S.D.N.Y. 2015) .............................................................................7

## STATUTES

FED. R. CIV. P. 23(a) ..........................................................................................................17

FED. R. CIV. P. 23(a)(2) .....................................................................................................17

FED. R. CIV. P. 23(a)(3) .....................................................................................................18

FED. R. CIV. P. 23(b)(3) .....................................................................................................19

FED. R. CIV. P. 23(c)(1)(B) ................................................................................................21

FED. R. CIV. P. 23(e)(2) .............................................................................................*passim*

FED. R. CIV. P. 23(e) ...........................................................................................................5

FED. R. CIV. P. 23(e)(2)(C)(i)-(iv) ...............................................................................15, 16

## INTRODUCTION

The Settlement reached with Settling Defendants[1] will provide Plaintiff and the Settlement Class with critically important and timely cooperation materials to strengthen the allegations in an amended complaint against the non-settling Defendants at an early stage of the litigation prior to formal discovery.  In its September 13, 2024 Decision and Order granting Defendants' Rule 12(b)(2) and 12(b)(6) motions to dismiss the complaint ("September 13 Order") (ECF No. 87), the Court ruled Plaintiff failed to state an antitrust claim and, consequently, failed to plead antitrust injury stemming from Defendants' alleged price-fixing.  Settling Defendants represent four of the five banks investigated by the United Kingdom Competition and Markets Authority ("CMA") for unlawfully sharing competitively sensitive information through conversations in chatrooms in violation of U.K. law.  Because their chatroom communications and trading records are not available publicly or prior to formal discovery, Plaintiff believes that the value of this cooperation cannot be overstated.  The Settlement does not include a monetary component; it is for cooperation only.

Plaintiff plans to utilize the cooperation from Settling Defendants to allege new evidence of coordination among Defendants in an amended complaint, including particularized allegations derived from chatroom conversations among Defendants.  These cooperation materials will put

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Citigroup Global Markets Limited, Citigroup Global Markets Inc., HSBC Bank plc, HSBC Securities (USA) Inc., RBC Europe Limited and RBC Capital Markets, LLC, Morgan Stanley & Co. International plc, and Morgan Stanley & Co. LLC (the "Stipulation").

Plaintiff in the best position to address the Court's September 13 Order.  Based on their experience and knowledge of the claims and defenses at issue in this Action, Plaintiff's Counsel believe that the Settlement is in the best interests of the Settlement Class.  *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that '"great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2]

As discussed more fully below, this Settlement provides valuable cooperation to the Settlement Class and should be approved as set forth in the proposed Preliminary Approval Order filed contemporaneously with this motion.

## PROCEDURAL BACKGROUND

On May 24, 2023, the CMA issued a Statement of Objections, which provisionally found that entities from each Defendant bank family violated Chapter 1 of the United Kingdom Competition Act 1998 ("CA98"),[3] by "unlawful[] sharing [of] competitively sensitive information" in Bloomberg chatrooms related to the buying and selling of Gilt Bonds, which "included details on pricing and other aspects of their trading strategies."  Declaration of Patrick Coughlin in Support of Motion for Preliminary Approval of Stipulation and Agreement of Settlement with Settling Defendants ("Coughlin Decl."), ¶7.  The CMA reported that "5 major banks – Citi, Deutsche Bank, HSBC, Morgan Stanley and Royal Bank of Canada – each unlawfully

---

[2]      Unless otherwise noted, citations are omitted, and emphasis is added.

[3]      Chapter 1 proscribes "agreements" to "directly or indirectly fix purchase or selling prices or any other trading conditions."

2

shared competitively sensitive information by participating in one or more series of one-to-one conversations in chatrooms." *Id.*

Following the CMA's disclosure of its investigation and preliminary findings, on June 16, 2023, Oklahoma Firefighters Pension and Retirement System ("Plaintiff") filed its Complaint alleging a conspiracy by Deutsche Bank, Citigroup, RBC, HSBC, and Morgan Stanley from January 1, 2009 through December 31, 2013 (the "Class Period") in violation of U.S. antitrust laws. *Id.*, ¶8.

On August 11, 2023, Defendants filed a letter requesting a pre-motion conference in anticipation of their forthcoming motion to dismiss the Complaint. *Id.*, ¶9. Plaintiff responded to the letter on August 21, 2023. *Id.* On September 14, 2023, the Court held the pre-motion conference and ordered a briefing schedule, which it subsequently entered in a joint stipulation and scheduling order. *Id.*

On September 28, 2023, Defendants filed two motions to dismiss – one for failure to state a claim and the other for improper venue and lack of personal jurisdiction. *Id.*, ¶10. Plaintiff responded to both motions on October 19, 2023. *Id.* Defendants filed replies on November 9, 2023. *Id.* The Court held oral argument on September 6, 2024, and subsequently issued the September 13 Order. *Id.*

The September 13 Order dismissed the Complaint, without prejudice, for failure to state a claim and permitted Plaintiff to seek leave to file an amended complaint that resolves the deficiencies identified in the Order. *Id.*, ¶11. The Court also stated that the failure to amend the complaint by the required time would result in dismissal with prejudice. *Id.*

Specifically, the Court found that the Complaint failed to identify any direct or circumstantial evidence to support the claim that Defendants colluded with one another. *Id.*, ¶12.

By failing to cite any chatroom conversations or any individual trade or pricing decision with specificity, the Court reasoned, Plaintiff's allegations of conspiracy were conclusory. *Id.* The Court further reasoned that allegations regarding the CMA's investigation into Defendants' conduct within the Gilts market, standing alone, did not provide direct or circumstantial evidence of a price-fixing conspiracy for Gilts traded in the United States. *Id.*

Regarding Plaintiff's antitrust standing allegations, the Court held that Plaintiff did not point to any transaction in which it paid too much or received too little when it bought or sold a Gilt with any of the Defendants, finding that this case is not like other actions in the Southern District of New York that set a lower threshold for pleading antitrust injury because, here, Plaintiff failed to allege a plausible "pervasive" conspiracy to fix spreads in the United States Gilts market. *Id.*, ¶13.

After assessing the Court's various holdings and evaluating potential amendment, on September 20, 2024, Plaintiff requested leave from the Court to seek limited pre-Rule 26(f) discovery from Defendants to aid Plaintiff in amending the Complaint. *Id.*, ¶14. Plaintiff sought documents and communications produced by Defendants to the CMA and deposition testimony concerning Defendants' pricing and trading decisions for Gilt Bonds in the United States. *Id.* On September 24, 2024, Defendants opposed Plaintiff's request. *Id.* The Court held a telephone conference on September 27, 2024, and denied the expedited discovery but set a schedule by which Plaintiff could seek leave to amend the Complaint. *Id.*

After the Court denied the motion for expedited discovery, Plaintiff's Counsel assessed the likelihood of an amended complaint being sustained based on currently available information, and concluded that Defendants' documents that had been produced to the CMA might address several aspects of the September 13 Order. *Id.*, ¶15. Plaintiff's Counsel then approached Settling

Defendants about possibly resolving the Action for cooperation from Settling Defendants. On October 15, the Parties executed a binding Term Sheet. *Id.*, ¶17. The Term Sheet requires Settling Defendants to provide significant and immediate cooperation – namely, the production of chats that were produced to the CMA – upon entry of an order preliminarily approving the Settlement. *Id.*

On October 16, 2024, the Parties informed the Court in a sealed filing that they had reached a settlement and sought a schedule for preliminary approval and the filing of a motion to amend. *Id.*, ¶18. The next day, the Court set the schedule for preliminary approval and for Plaintiff to file its motion to amend. *Id.* Over the next two weeks, the Parties negotiated the terms of the Stipulation, executing the final agreement on October 31, 2024. *Id.*, ¶19.

## ARGUMENT

## I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The preliminary approval process is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will ***likely*** be able to grant final approval and certify the class." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (S.D.N.Y. 2019) (emphasis in original). Under this standard, the Court must consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims [if required];

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). The Rule 23 factors "supplement rather than displace the[] '*Grinnell*' factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during the preliminary approval process. *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). *Grinnell* requires the Court to weigh the following factors to determine whether a proposed settlement is fair, reasonable, and adequate:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

### A.    The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))

Whether a settlement is procedurally fair depends on the process undertaken to achieve it. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). The Settlement here is entitled to a presumption of fairness because it was reached by capable counsel that is experienced in antitrust class action litigation. *See GSE Bonds*, 2019 WL 6842332, at *2; *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)

(stating that where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness"), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

The Settlement is the product of arm's-length negotiations, informed by the Court's September 13 Order and denial of expedited discovery.  Coughlin Decl., ¶11.  Plaintiff's Counsel has considered the uncertain outcome, risks of further litigation, and the availability of the cooperation materials through alternative means and believes the Settlement confers vital non-monetary benefits on the Settlement Class.  *Id.*, ¶21.  Based on these considerations, "there is a presumption that the terms of the settlement are also fair and reasonable."  *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 66 F. Supp. 3d 477, 482 (S.D.N.Y. 2015); *see also Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, 'absent fraud or collusion [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'").

**B.    The Settlement Is Substantively Fair**

**1.    The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)**

This Action involves complex issues of law and fact.  Defendants' arguments raised in support of their motions to dismiss the Complaint (ECF Nos. 63, 64), and the Court's crediting of certain of Defendants' arguments in its September 13 Order, illustrate the complexity of the Action.  Defendants argued, and the Court credited, that Plaintiffs failed to identify chatroom or statistical evidence of parallel pricing indicative of the alleged conspiracy.  September 13 Order at 19-21.  The Court also expressed skepticism at the likelihood of Defendants exercising market power over the secondary Gilt Bonds market.  *Id.* at 21.  Defendants also challenged the relevance

of the CMA's Gilts investigation to the alleged violation of U.S. law. *Id.* at 25-26. Defendants also argued, and the Court agreed, that Plaintiff lacks antitrust standing because Plaintiff did not point to any transaction in which it paid too much or received too little when it bought or sold a Gilt with any of the Defendants. *Id.* at 31-32.

There is no doubt that beyond the pleading stage, complex issues of law and fact are also likely to be raised at the class certification stage, and the losing party will likely seek interlocutory review pursuant to Rule 23(f), which will cause delay in resolving the litigation. *See In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) (noting that "[i]n the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Further, any trial in this Action is likely to be lengthy, and "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation." *Payment Card*, 986 F. Supp. 2d at 222.

As a result, numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). This case is no different. In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). Accordingly, this factor weighs in favor of the Settlement.

### 2.    The Reaction of the Settlement Class (*Grinnell* Factor #2)

This *Grinnell* factor is generally inapplicable prior to disseminating notice.  *See Payment Card*, 330 F.R.D. at 29 (declining to address "the reaction of the class to the settlement"); *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").  At this time, the reaction of the Settlement Class comes from Plaintiff who authorized the Settlement.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing substantive fairness, the Court considers "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("[T]he question is whether the parties had adequate information about their claims.").  Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Plaintiff's Counsel's knowledge of the merits and potential weaknesses of Plaintiff's claims supports preliminary approval of the Settlement.  Plaintiff's Counsel have undertaken an extensive investigation, which included analyzing disclosures on the CMA's competition charges against Defendants and engaging experts to collect and analyze available data of Gilt secondary market quotes from Defendants and other banks during the Class Period and beyond.  *See, e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493 (VB), 2013 WL 4080946, at *7

(S.D.N.Y. May 30, 2013) (stating "[a]lthough the parties have not engaged in extensive discovery, . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

By the time the Settlement occurred, Plaintiff received and analyzed Defendants' motions to dismiss and attended and prepared for multiple conferences and oral arguments held in the Action. Plaintiff's Counsel also reviewed the Court's ruling on Defendants' motions to dismiss. If the Settlement is preliminarily approved, Plaintiff expects that the cooperation provided by Settling Defendants would directly address concerns expressed by the Court in granting Defendants' motion to dismiss for failure to state a claim.

Thus, Plaintiff's Counsel are well apprised of the strengths and weaknesses of Plaintiff's claims. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 299 (E.D. Pa. 2012) (finding counsel had adequate knowledge of the litigation where counsel had "'conducted extensive investigations into the case in preparation for filing of the complaint'" and defendants' motions to dismiss provided counsel "with an additional platform from which to ascertain [settling defendant's] and the other [d]efendants' positions on the case and thereby to evaluate further the merits of the litigation"). Plaintiff's Counsel "'have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.

### 4. The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)

To assess this factor, "the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation." *Payment Card*, 986 F. Supp. 2d at 224. Regarding liability, there are many significant litigation risks as

Defendants will no doubt vigorously contest all elements of Plaintiff's claims during each stage of the case.

Indeed, Defendants' motions to dismiss have already raised difficult issues of law and fact. For example, in their motion to dismiss, Defendants argued that Plaintiff failed to allege a plausible overarching conspiracy to fix spreads on Gilt Bonds sold in the United States. Defendants minimized the CMA's findings, arguing that the CMA's press release suggests Gilt-edged Market Makers only "sporadically exchanged information" and that it did not mention any U.S.-based Defendants. Defendants' argument swayed the Court at the pleading stage. Even if Plaintiff can convince the Court that its amended complaint plausibly alleges an overarching conspiracy, it will face a higher burden of proof at the summary judgment and trial stage. Accordingly, Plaintiff faces significant litigation risk in establishing liability under Section 1 of the Sherman Act, 15 U.S.C. §1.

If liability is established, Plaintiff will still face the difficulties inherent in proving damages. Plaintiff's theory of damages will be hotly contested, and there is no doubt that at trial the issue will involve a "battle of the experts." *NASDAQ*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Thus, there is a substantial risk that a jury might accept one or more of Defendants' damages arguments, or award far less than the value of the Settling Defendants' cooperation, or nothing at all. Indeed, "'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no

damages, or only negligible damages, at trial, or on appeal.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005).

In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987).

### 5. The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09-CV-1029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of . . . settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Plaintiff believes it will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition. Thus, there is a risk that this litigation might not be maintained as a class through trial. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case).

### 6. Settling Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

If the Settlement is approved, Settling Defendants will not be required to pay any money in a judgment because the Settlement is for cooperation only; however, this is not a barrier to preliminary approval, or ultimately, final approval. "'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'" *Vitamin C*, 2012 WL 5289514, at *6. Here, Settling Defendants' ability

to withstand a greater judgment is offset by the value of the cooperation agreed to in the Stipulation.  Coughlin Decl., ¶21; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008); *see also Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*, No. C06-00089, ECF No. 43, at 7 (W.D. Wash. Sept. 22, 2006) (finding that settling defendant's "cooperation shall provide critical information and benefit to the class that is likely to far surpass the quantity, quality, and timeliness of the information that could be gleaned via the normal discovery process").

> **7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)**

If Plaintiff does not obtain the chatroom communications from Settling Defendants before it must amend the Complaint, Plaintiff is significantly less likely to be able to sustain its claims against any Defendant.  Defendants' chatroom communications are not publicly available.  If the Court preliminarily approves the Settlement, Plaintiff will obtain Settling Defendants' chatroom communications, which Plaintiff anticipates using to bolster its allegations of conspiracy.  Courts approve cooperation-only settlements when, as here, the cooperation "confers real and substantial benefits upon the Class."  *Processed Egg Prods.*, 284 F.R.D. at 303 (granting final approval to pre-discovery cooperation-only settlement in multi-defendant action); *see, e.g.*, *Wanechek Mink Ranch*, ECF No. 43, at 7 (granting preliminary approval to pre-discovery cooperation-only settlement in multi-defendant action); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1009 (E.D. Wis. Aug. 16, 2010) (approving pre-discovery cooperation-only settlement in multi-defendant action which "provided plaintiffs with quite a bit of information about the operation of the alleged conspiracy"); *Laydon v. Mizuho Bank, Ltd.*, No. 12-3419, ECF No. 720 (S.D.N.Y. Nov. 10, 2016) (approving pre-discovery cooperation-only settlement in multi-defendant action).  The Settlement provides a valuable benefit to the Class because it will save

time, reduce costs, and provide access to information and documents to which the Plaintiff otherwise would not have had access. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003). While this value cannot be measured in monetary terms, it nevertheless should be accorded significant weight by the Court in determining the reasonableness of the Settlement, especially in light of the procedural posture of the litigation and the pleading standards discussed by the Supreme Court in *Twombly*. *See, e.g., id.*

Moreover, while the Settlement does not have a monetary benefit, under the doctrine of joint and several liability, Plaintiff is able to seek the full amount of damages on behalf of the Class from the non-settling Defendant, Deutsche Bank, and the Stipulation at ¶3.5 specifically reserves this right. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058-JST, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-settling defendants "provides increased value . . . by creating added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial").

In light of the risk of dismissal of the Action in the absence of the Settlement, this cooperation-only Settlement is reasonable. The Settlement confers substantial benefits while eliminating risks attendant to continued litigation against Settling Defendants.

**C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval of the Settlement**

**1.    Rule 23(e)(2)(A) – Plaintiff and Plaintiff's Counsel Have Adequately Represented the Settlement Class**

Plaintiff shares the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from Settling Defendants. Plaintiff is part of the Settlement Class and suffered the same injuries as other Class Members – *i.e.*, monetary losses when they were overcharged or underpaid in their transactions with Defendants in Gilt Bonds. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class

14

and "possess the same interest and suffer the same injury" as the class members'").  Plaintiff has

played an active role in this case's development, prosecution, and settlement.  *See Denney v.*

*Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (stating that a class representative "must

have an interest in vigorously pursuing the claims of the class and must have no interests

antagonistic to the interests of other class members").  Thus, Plaintiff is an adequate representative

of the Settlement Class and should be appointed as class representative for settlement purposes.

Further, Plaintiff's Counsel have demonstrated they are qualified, experienced, and able to conduct

the litigation.  *See* Section II.C., *infra*.

### 2. Rule 23(e)(2)(C) – the Cooperation Provided by Settling Defendants is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors

To assess whether this relief is adequate, Rule 23(e)(2)(C) requires the Court to consider:

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
proposed method of distributing relief to the class, including the method of
processing class-member claims; (iii) the terms of any proposed award of attorney's
fees, including timing of payment; and (iv) any agreement required to be identified
under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C)(i-iv).  Plaintiff previously discussed Rule 23(e)(2)(C)(i) in Sections

I.B.1, I.B.4, and I.B.5, *supra*.[4]  The remaining Rule 23(e)(2)(C) factors support preliminarily

approving the Settlement.

---

[4]      *Grinnell* factors 1, 4, 5, and 6 are subsumed by Rule 23(e)(2)(C)(i), which analyzes the

costs, risks, and delay of trial and appeal.  *Payment Card*, 330 F.R.D. at 36.

15

**a.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) –**
**Effectiveness of Any Proposed Method of Distributing**
**Relief to the Class and the Terms of Any Proposed**
**Award of Attorneys' Fees**

Because the Settlement is a cooperation-only settlement, there is no proposed method of

distributing relief to the Settlement Class and Plaintiff's Counsel will not be seeking an award of

attorneys' fees from the Settlement.

**b.    Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be**
**Identified Under Rule 23(e)(3)**

The Settlement fully describes the relief to which Class Members are entitled and all

agreements that may impact the Settlement.    This includes disclosing the existence of a

Supplemental Agreement that provides Settling Defendants with a qualified right to terminate the

Settlement.  Stipulation, ¶8.5.  This type of agreement, often referred to as a "blow" provision, is

common in class action settlements.  *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d

686, 696 (S.D.N.Y. 2019) (finding, after review, that a similar blow provision "has no bearing on

the [settlement] approval analysis"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948

(9th Cir. 2015); *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-cv-1152, 2018 WL 1942227,

at *5 (N.D. Tex. Apr. 25, 2018).

**3.    Rule 23(e)(2)(D) – the Settlement Treats Class Members**
**Equitably Relative to Each Other**

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of

the release may affect class members in different ways that bear on the apportionment of relief."

FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.  The Releases treat all Class

Members equitably relative to one another.   Subject to Court approval, all Settlement Class

Members will be giving Settling Defendants an identical release running to the identical factual predicate of the Action.  Stipulation, ¶¶3-10.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.    The Settlement Class Meets the Requirements of Rule 23(a)

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b).  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012).  Rule 23(a) provides that a class may be certified if the plaintiff demonstrates numerosity, commonality, typicality, and adequacy of the class plaintiffs.  FED. R. CIV. P. 23(a).  The Settlement Class meets the requirements of Rule 23(a) for settlement purposes.

#### 1.    Class Members Are So Numerous that Joinder Is Impracticable

In cases involving widely-traded instruments such as this one, numerosity is readily satisfied.  *See Wallace v. IntraLinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (stating that courts presume numerosity for classes of 40 or more members).

#### 2.    There Are Questions of Law and Fact Common to All Class Members

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  This threshold is satisfied if the question is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores*, 564 U.S. at 350.  When assessing commonality, even "'a single [common] question will do.'"  *Id.* at 359.  Commonality is regularly found in antitrust cases because questions of the existence, nature, and scope of an antitrust conspiracy are common.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F.

Supp. 3d 430, 590 (S.D.N.Y. 2018) (stating that "the existence of a conspiracy is a common question").

### 3.    Plaintiff's Claims Are Typical of Those of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  This standard is satisfied when "'each [class] member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (citing *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  "[F]actual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class."  *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).  The standard is "'not highly demanding,'" *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is readily satisfied in price-fixing claims which aim to prove "a conspiracy, its effectuation, and damages therefrom."  *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).

Plaintiff's claims are typical of the Settlement Class's claims because Plaintiff alleges the same unlawful course of conduct harmed all Class Members.  *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y. 2010) (stating that "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system'").  Any differences that may exist as to the amount of injury suffered by each Settlement Class Member does not preclude a finding of typicality.  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998).

### 4.    The Settlement Class Is Fairly and Adequately Represented

As discussed previously at Section I.C.1, *supra*, in the Rule 23(e)(2)(A) analysis, Plaintiff and Plaintiff's Counsel have fairly and adequately represented the Settlement Class.

### B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) permits a case to be litigated as a class action if (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, NEWBERG ON CLASS ACTIONS §4:49, at 195-96 (5th ed. 2012)).  Predominance is satisfied "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).  A plaintiff does not have "'to prove that each element of her claim is susceptible to classwide proof,'" but rather, a plaintiff need only show "'that common questions *predominate* over any questions affecting only individual [class] members.'"  *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017) (quoting *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013)) (emphasis in original).

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *Elec. Books*, 2014 WL

1282293, at *14 ("'where plaintiffs were allegedly aggrieved by a single policy of the defendant[],

and there is a strong commonality of the violation and the harm, this is precisely the type of

situation for which the class action device is suited'") (quoting *Brown*, 609 F.3d at 484).

Here, each element of the Plaintiff's antitrust claims – collusion, causation and impact, and

damages – would be proven through common evidence. *See In re Vitamin C Antitrust Litig.*, 279

F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have

frequently held that the predominance requirement is satisfied because the existence and effect of

the conspiracy are the prime issues in the case and are common across the class") (citing cases).

The existence and scope of Defendants' conspiracy to fix prices for Gilt Bonds sold to U.S.

investors can be established by common evidence, such as chat room communications and the

deposition testimony of Defendants' traders. *In re NASDAQ Market-Makers Antitrust Litig.*, 169

F.R.D. 493, 518 (S.D.N.Y. 1996) ("Courts repeatedly have held that the existence of a conspiracy

is the predominant issue in price fixing cases, warranting certification of the class even where

significant individual issues are present."). None of this proof will vary across Class Members.

Rather, proof of the conspiracy "will focus on the actions of the defendants, and, as such, proof

for these issues will not vary among class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D.

251, 264 (D.D.C. 2002). Further, classwide impact, causation, and damages can also be

demonstrated using common evidence, including through expert testimony and modeling that

relies on Defendants' transaction data, which is common to all members of the Settlement Class

and requires no individualized inquiries.

### 2.    A Class Action Is the Superior Method for Resolving This Case

A case satisfies the superiority test if "the class device will achieve economies of scale,

conserve judicial resources, preserve public confidence in the integrity of the judicial system by

avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of

similar claims." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016) (citing *Gonqueh v. Leros Point to Point, Inc*., No. 14-CV-5883 (GHW), 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)).  Superiority is "explicitly comparative in nature: courts must ask whether 'a class action is **superior to other available methods** for fairly and efficiently adjudicating the controversy.'"  *Petrobras*, 862 F.3d at 268 (quoting FED. R. CIV. P. 23(b) (emphasis in original)).  In the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem*, 521 U.S. at 620; *Am. Int'l Grp.*, 689 F.3d at 239, 240.

Class litigation is superior in actions where, as here, it would be unduly costly for Class Members to pursue litigation on their own.  *See Elec. Books*, 2014 WL 1282293, at *23 (citing *Amchem*, 521 U.S. at 617); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The **realistic** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original).  Additionally, Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy."  *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

### C.    The Court Should Appoint Plaintiff's Counsel as Counsel for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." FED. R. CIV. P. 23(c)(1)(B) (considering the factors identified in Rule 23(g)(1)(A)(i)-(iv)). Scott+Scott Attorneys at Law LLP ("Scott+Scott") has diligently pursued the claims in this Action, undertaking an extensive investigation of the facts prior to bringing a claim, drafting the Complaint and amending the Complaint, briefing and arguing the motions to dismiss, and negotiating the Settlement.  Coughlin Decl., ¶1.  No other firms have filed follow-on actions.  Scott+Scott has

competently undertaken the responsibilities of litigating this complex class action. Accordingly, Plaintiff requests that Scott+Scott be appointed as counsel for the Settlement Class.

## III.    NOTICE TO THE SETTLEMENT CLASS

Plaintiff and Settling Defendants propose to move the Court by separate, subsequent motion to provide notice to the Settlement Class. Settling Defendants have agreed to supply reasonably-accessible names and addresses of potential Settlement Class Members for purposes of facilitating Notice. Stipulation, ¶2.1.3. Plaintiff will move for approval of the notice plan after Settling Defendants provide a timeline of production of potential Settlement Class Member information.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order preliminarily approving the Settlement.

Dated: October 31, 2024

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 *s/ Patrick Coughlin*
PATRICK COUGHLIN
CARMEN MEDICI (*pro hac vice*)
FATIMA BRIZUELA
PATRICK J. RODRIGUEZ
DANIEL J. BROCKWELL (*pro hac vice*)
JOHN SMALLWOOD (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com
dbrockwell@scott-scott.com
jsmallwood@scott-scott.com
prodriguez@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
KRISTEN M. ANDERSON
DONALD A. BROGGI
MICHELLE E. CONSTON
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
DAVID R. SCOTT
AMANDA LAWRENCE
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com

*Counsel for Plaintiff Oklahoma Firefighters
Pension and Retirement System, and Proposed
Class Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this memorandum of law contains 6,513 words in compliance with

Section II (D) of the Individual Practices of Judge John G. Koeltl, dated July 6, 2022.

DATED: October 31, 2024                     *s/ Patrick Coughlin*
_____
PATRICK COUGHLIN

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that on October 31, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

          *s/ Patrick Coughlin*
          PATRICK COUGHLIN