# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-05095 |
| | The Honorable John G. Koeltl |
| Plaintiff, | |
| v. | |
| DEUTSCHE BANK AKTIENGESELLSCHAFT (F/K/A DEUTSCHE BANK AG); DEUTSCHE BANK SECURITIES INC.; CITIGROUP GLOBAL MARKETS LIMITED; CITIGROUP GLOBAL MARKETS INC.; RBC EUROPE LIMITED; RBC CAPITAL MARKETS LLC; HSBC BANK PLC; HSBC SECURITIES (USA) INC.; MORGAN STANLEY & CO. INTERNATIONAL PLC; and MORGAN STANLEY & CO. LLC, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF AMENDED STIPULATION AND
AGREEMENT OF SETTLEMENT WITH CITIGROUP GLOBAL MARKETS
LIMITED, CITIGROUP GLOBAL MARKETS INC., HSBC BANK PLC, HSBC
SECURITIES (USA) INC., RBC EUROPE LIMITED, RBC CAPITAL MARKETS, LLC,
MORGAN STANLEY & CO. INTERNATIONAL PLC, AND
<u>MORGAN STANLEY & CO. LLC</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

PROCEDURAL BACKGROUND & SETTLEMENT NEGOTIATIONS..................................2

ARGUMENT ....................................................................................................................4

I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED
SETTLEMENT.........................................................................................................4

    A.    The Settlement Is Procedurally Fair Because It Was Achieved Through
Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))......................................4

    B.    The Settlement Is Substantively Fair ...................................................................5

        1.    The Complexity, Expense, and Likely Duration of the Litigation
(*Grinnell* Factor #1)....................................................................................5

        2.    The Reaction of the Settlement Class (*Grinnell* Factor #2)........................6

        3.    The Stage of the Proceedings and the Amount of Discovery
Completed (*Grinnell* Factor #3).................................................................6

        4.    The Risks of Establishing Liability and Damages
(*Grinnell* Factors #4, 5) ............................................................................7

        5.    The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6).......9

        6.    Settling Defendants' Ability to Withstand a Greater Judgment
(*Grinnell* Factor #7)...................................................................................9

        7.    The Range of Reasonableness of the Settlement Fund in Light of the
Best Possible Recovery and Attendant Risks of Litigation
(*Grinnell* Factors #8, 9) ..........................................................................10

    C.    The Remaining Rule 23(e)(2) Factors Support Preliminary Approval................13

        1.    Rule 23(e)(2)(A) – Plaintiff and Plaintiff's Counsel Have Adequately
Represented the Settlement Class .............................................................13

        2.    Rule 23(e)(2)(C) – the Consideration Provided by Settling Defendants
is Adequate, Taking into Account the Costs and Risks of Further
Litigation and All Other Relevant Factors.................................................14

        3.    Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably
Relative to Each Other..............................................................................16

II.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED .....................16

    A.    The Settlement Class Meets the Requirements of Rule 23(a)..............................16

        1.    Class Members Are So Numerous that Joinder Is Impracticable .............16

        2.    There Are Questions of Law and Fact Common to All Class Members...16

        3.    Plaintiff's Claims Are Typical of Those of the Settlement Class .............16

        4.    The Settlement Class Is Fairly and Adequately Represented ..................17

    B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................17

           1.    Common Questions of Law and Fact Predominate.................................17

           2.    A Class Action Is the Superior Method for Resolving This Case.............18

    C.    The Court Should Appoint Plaintiff's Counsel as Counsel for the Settlement Class ...................................................................................................................19

  III.  NOTICE TO THE SETTLEMENT CLASS...................................................................19

  IV.  DEUTSCHE BANK'S POSITION STATEMENT IS MOOT AND MERITLESS ........22

CONCLUSION.................................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*33-35 Green Pond Road Associates, LLC v. Bank Of America Corporation et al.*,
  No. 1:12-cv-05822-NRB, ECF No. 234 (S.D.N.Y. Apr. 30, 2020) ........................................ 11

*In re Am. Int'l Grp. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) ............................................................................................ 18

*In re Amaranth Nat. Gas Commodities Litig.*,
  269 F.R.D. 366 (S.D.N.Y. 2010) .................................................................................... 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................ 18

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................ 6, 7

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche
  Bank*, 236 F.3d 78 (2d Cir. 2001) .................................................................................. 4

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................................... 7

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 Civ. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ................................ 9

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) .......................................................................................... 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-cv-2058-JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) .............................. 13

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................................................ 22

*Contant v. Bank of America Corp.*,
  No. 17-cv-3139-LGS, ECF No. 441 (S.D.N.Y. July 17, 2020) ........................................ 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ............................................................................................ 17

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) .................................................................................... 18

*In re Currency Conversion Fee Antitrust Litig.*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ....................................................................17

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ..........................................................................13

*Dial Corp. v. News Corp.*,
    314 F.R.D. 108 (S.D.N.Y. 2015) ...................................................................16

*In re Elec. Books Antitrust Litig.*,
    No. 11-MD-2293-DLC, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ......... 17, 18

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, ECF No. 212 (S.D.N.Y. June 16, 2021) ................. 11, 12

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, ECF No. 258 (S.D.N.Y. June 16, 2021) ...................11

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, 2022 WL 768680 (S.D.N.Y. Mar. 14, 2022) .............12

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, ECF No. 315 (S.D.N.Y. Nov. 17, 2022) ...................22

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, 2023 WL 11646009 (S.D.N.Y. Sept. 25, 2023) .........13

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, ECF No. 485 (S.D.N.Y. Apr. 19, 2024) ...................22

*In re European Government Bonds Antitrust Litig.*,
    No. 1:19-cv-02601-VM, ECF No. 529 (S.D.N.Y. Dec. 9, 2024) ....................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*,
    822 F. App'x 40 (2d Cir. 2020) ................................................................ 20, 21

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    No. 13 CIV. 7789, 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016) ..................12

*Garland v. Cohen & Krassner*,
    No. 08-CV-4626 (KAM), 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011) ...........9

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................ 11, 15

*In re GSE Bonds Antitrust Litig.*,
    No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .............4

*Guippone v. BH S&B Holdings LLC*,
    No. 09-CV-1029 (CM), 2016 WL 5811888 (S.D.N.Y. Sept. 23, 2016) .................................9

*Henry v. Little Mint, Inc.*,
    No. 12 Civ. 3996 (CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) .................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) .................................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    327 F.R.D. 483 (S.D.N.Y. 2018) .........................................................................................22

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003)...................................................................................13

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................................1

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) .........................................................................................22

*In re Mexican Gov't Bonds Antitrust Litig.*,
    412 F. Supp. 3d 380 (S.D.N.Y. 2019) .................................................................................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 18-CV-2830 (JPO), 2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020)...............................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 1:18-cv-04673(JPO), ECF No. 25 (S.D.N.Y. Dec. 16, 2020)............................ 10, 11, 12

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 18-CV-2830 (JPO), 2025 WL 104099 (S.D.N.Y. Jan. 15, 2025) ..................................12

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................................................4

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................................6, 8

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .....................................13

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013)................................................................................6, 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) .........................................................................................4, 6

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998)........................................................................17

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................................. 9, 13

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 278 (E.D. Pa. 2012)..............................................................................7

*Richardson v. L'Oreal USA, Inc.*,
    951 F. Supp. 2d 104 (D.D.C. 2013) .......................................................................10

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011).....................................................................10

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ...................................................................................16

*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) .........................................................................10

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
    257 F.3d 256 (2d Cir. 2001) .....................................................................................6

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012) .............................................................................17

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012)............ 6, 9

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002)...............................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................. 9, 19

*Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*,
    No. C06-00089, ECF No. 43 (W.D. Wash. Sept. 22, 2006).................................10

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................8

*Yim v. Carey Limousine NY, Inc.*,
    No. 14-CV-5883(WFK)(JO), 2016 WL 1389598 (E.D.N.Y. Apr. 7, 2016) ..........10

**Statutes**

15 U.S.C. §1 ...................................................................................................................8

Fed. R. Civ. P. 23(c)(1)(B) .........................................................................................19

Fed. R. Civ. P. 23(c)(2)(B)....................................................................................19, 20

Fed. R. Civ. P. 23(e)(2) ....................................................................................4, 13, 16

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................14

Fed. R. Civ. P.  23(g)(1)(A)(i)-(iv) .............................................................................19

## INTRODUCTION

Following the Court's comments at the January 8, 2025 conference regarding the previously proposed cooperation-only settlement, the Parties have amended the terms of their settlement. The amended Settlement's[1] terms, if approved, will provide Plaintiff and the Settlement Class with $12,000,000 in recovery and critically important and timely cooperation materials. In addition, Settling Defendants will reimburse up to $1,000,000 in Notice and Administration Costs. And, importantly, Plaintiff's Counsel will not be seeking any award of attorneys' fees from the Settlement Fund and will only seek reimbursement of certain Litigation Expenses. Based on their experience and knowledge of the claims and defenses at issue in this Action, Plaintiff's Counsel believe that the Settlement is in the best interests of the Settlement Class. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").[2]

Plaintiff respectfully requests that the Court approve the proposed Notice Plan, described herein, and set a schedule for a Fairness Hearing as set forth in the proposed Preliminary Approval Order filed contemporaneously with this motion. To provide adequate time to complete the Notice

---

[1]    Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Amended Stipulation and Agreement of Settlement with Citigroup Global Markets Limited, Citigroup Global Markets Inc., HSBC Bank plc, HSBC Securities (USA) Inc., RBC Europe Limited and RBC Capital Markets, LLC, Morgan Stanley & Co. International plc, and Morgan Stanley & Co. LLC (the "Stipulation").

[2]    Unless otherwise noted, citations are omitted and emphasis is added.

Plan, Plaintiff respectfully requests the Court schedule the Fairness Hearing no earlier than nine months from entry of the Preliminary Approval Order.  A proposed schedule of Settlement events is included as Exhibit 3 to the Declaration of Patrick Coughlin in Support of Settlement ("Coughlin Decl.").

## PROCEDURAL BACKGROUND & SETTLEMENT NEGOTIATIONS[3]

On September 13, 2024, the Court issued a Decision and Order granting Defendants' Rule 12(b)(2) and 12(b)(6) motions to dismiss the complaint ("September 13 Order") (ECF No. 87), dismissing the Complaint, without prejudice, for failure to state a claim and permitted Plaintiff to seek leave to file an amended complaint.  The Court also stated that the failure to amend the complaint by the required time would result in dismissal with prejudice.  ¶12.

Specifically, the Court found that the Complaint failed to identify any direct or circumstantial evidence to support the claim that Defendants colluded with one another.  By failing to cite any chatroom conversations or any individual trade or pricing decision with specificity, the Court reasoned, Plaintiff's allegations of conspiracy were conclusory.  The Court further reasoned that allegations regarding the CMA's investigation into Defendants' conduct within the Gilts market, standing alone, did not provide direct or circumstantial evidence of a price-fixing conspiracy for Gilts traded in the United States.  ¶13.

After assessing the Court's various holdings and evaluating potential amendment, on September 20, 2024, Plaintiff requested leave to seek limited pre-Rule 26(f) discovery from Defendants to aid Plaintiff in amending the Complaint, including documents produced by

---

[3]    This section summarizes the Action's procedural background and settlement negotiations. Additional details are included in the Coughlin Decl.  All citations to "¶" are to the Coughlin Decl.

Defendants to the CMA.  The Court denied the expedited discovery and set a schedule for Plaintiff to seek leave to amend.  ¶15.

Plaintiff's Counsel assessed the likelihood of an amended complaint being sustained based on currently available information and concluded that Defendants' documents that were produced to the CMA might address several aspects of the September 13 Order.  Plaintiff's Counsel then approached Settling Defendants about possibly resolving the Action for cooperation from Settling Defendants.  On October 15, 2024, the Parties executed a binding Term Sheet.  The Settlement requires Settling Defendants to provide significant cooperation – namely, the production of chats that were produced to the CMA – upon entry of an order preliminarily approving the settlement. ¶¶16-18.

On October 16, 2024, the Parties informed the Court in a sealed filing that they had reached a settlement, and the Court set the schedule for preliminary approval and for Plaintiff to file its motion to amend.  The Parties executed a settlement agreement, and Plaintiffs filed a preliminary approval motion on October 31, 2024.  ¶¶19-21.

On January 8, 2025, the Court held a conference regarding the original stipulation.  Taking into account the Court's comments, the Parties engaged in further negotiations and, in addition to the previously agreed non-monetary cooperation, agreed to settle the Action for $12 million on January 15, 2025.  The Parties informed the Court in a sealed filing that they had reached a monetary settlement in addition to the previous cooperation agreement and sought a schedule for filing amended preliminary approval papers and notice.  Deutsche Bank, at the Court's instruction, filed a position statement concerning the original settlement that same day.  ECF No. 110.  The Parties executed the Stipulation on January 22, 2025.  ¶¶22-24.

## ARGUMENT

### I.    THE COURT IS LIKELY TO GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

Rule 23(e) requires court approval of a proposed class action settlement upon finding that the proposal "is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Preliminary approval is governed by a "likelihood standard" – requiring the Court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (emphasis in original). Under this standard, the Court must consider factors listed in 23(e)(A)-(D); these factors "supplement rather than displace the[] '*Grinnell'* factors" traditionally considered in the Second Circuit to evaluate the substantive fairness of a settlement during preliminary approval. *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

### A.  The Settlement Is Procedurally Fair Because It Was Achieved Through Extensive Arm's-Length Negotiation (Rule 23(e)(2)(B))

Whether a settlement is procedurally fair depends on the process undertaken to achieve it. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). The Settlement here is entitled to a presumption of fairness because it was reached by counsel who are experienced in antitrust class action litigation. *See GSE*, 2019 WL 6842332, at *2; *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (stating that where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness"), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *Henry v. Little Mint, Inc.*,

No. 12 Civ. 3996 (CM), 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) ("If the settlement was achieved through experienced counsels' arm's-length negotiations, 'absent fraud or collusion [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'").

The Settlement is the product of arm's-length negotiations, informed by the Court's September 13 Order, denial of expedited discovery, and comments at the January 8 conference. ¶24. If the Settlement is preliminarily approved, the Settlement Class will obtain an immediate and definite recovery, and Plaintiff expects that the cooperation provided by Settling Defendants would directly address concerns expressed by the Court in granting Defendants' motion to dismiss. Accordingly, Plaintiff's Counsel believe the Settlement's terms are fair, reasonable, and adequate and should be approved. ¶27.

### B. The Settlement Is Substantively Fair

#### 1. The Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor #1)

This Action involves complex issues of law and fact. Defendants' arguments raised in support of their motions to dismiss the Complaint (ECF Nos. 63, 64), and the Court's crediting of certain of Defendants' arguments in its September 13 Order, illustrate the complexity of the Action. Defendants argued, and the Court credited, that Plaintiff failed to identify chatroom or statistical evidence of parallel pricing indicative of the alleged conspiracy. September 13 Order at 19-21. The Court also expressed skepticism at the likelihood of Defendants exercising market power over the secondary Gilt Bonds market. *Id.* at 21. Defendants also argued, and the Court agreed, that Plaintiff lacks antitrust standing because Plaintiff did not point to any transaction in which it paid too much or received too little when it bought or sold a Gilt with any Defendants. *Id.* at 31-32.

5

Numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC), 2012 WL 5289514, at \*4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"). This case is no different. There is no doubt that beyond the pleading stage, complex issues of law and fact are also likely to be raised at class certification and summary judgment. Further, any trial is likely to be lengthy, and "[t]he losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 222 (E.D.N.Y. 2013). In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998).

### 2. The Reaction of the Settlement Class (*Grinnell* Factor #2)

This *Grinnell* factor is generally inapplicable prior to disseminating notice. *See Payment Card*, 330 F.R.D. at 29 (declining to address "the reaction of the class to the settlement" at preliminary approval). At this time, the reaction of the Settlement Class comes from Plaintiff who authorized the Settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed (*Grinnell* Factor #3)

In assessing substantive fairness, the Court considers "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at \*10 (S.D.N.Y. Apr. 6, 2006). Further, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members

to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Plaintiff's Counsel are well apprised of the strengths and weaknesses of Plaintiff's claims. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 299 (E.D. Pa. 2012) (finding counsel had adequate knowledge of the litigation where counsel had "'conducted extensive investigations into the case in preparation for filing of the complaint'" and defendants' motions to dismiss provided counsel "with an additional platform from which to ascertain [settling defendant's] and the other [d]efendants' positions on the case and thereby to evaluate further the merits of the litigation"). First, Plaintiff's Counsel undertook an extensive investigation, which included analyzing disclosures on the CMA's competition charges against Defendants and engaging consultants to better understand the market and experts to collect and analyze available data of Gilt secondary market quotes from Defendants and other banks during the Class Period and beyond. ¶8. By the time the Settlement occurred, Plaintiff received and analyzed Defendants' motions to dismiss and attended and prepared for multiple conferences and oral arguments held in the Action. Plaintiff also reviewed the September 13 Order and took into account the comments the Court made at the January 8, 2025 conference regarding the prior cooperation-only settlement. Plaintiff's Counsel "'have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10.

### 4. The Risks of Establishing Liability and Damages (*Grinnell* Factors #4, 5)

To assess this factor, "the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation." *Payment*

*Card*, 986 F. Supp. 2d at 224. Regarding liability, there are many significant litigation risks as Defendants will vigorously contest all elements of Plaintiff's claims during each stage of the case.

Indeed, Defendants' motions to dismiss have already raised difficult issues of law and fact. For example, in their motion to dismiss, Defendants argued that Plaintiff failed to allege a plausible overarching conspiracy to fix spreads on Gilt Bonds sold in the United States. Defendants minimized the CMA's findings, arguing that the CMA's press release suggests Gilt-edged Market Makers only "sporadically exchanged information" and did not mention any U.S.-based Defendants. Defendants' argument swayed the Court at the pleading stage. Even if Plaintiff can convince the Court that its amended complaint plausibly alleges an overarching conspiracy, it will face a higher burden of proof at summary judgment and trial. Accordingly, Plaintiff faces significant litigation risk in establishing liability under Section 1 of the Sherman Act, 15 U.S.C. §1.

If liability is established, Plaintiff will still face the difficulties inherent in proving damages. Plaintiff's theory of damages will be hotly contested, and there is no doubt that at trial the issue will involve a "battle of the experts." *NASDAQ*, 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Thus, there is a substantial risk that a jury might accept Defendants' damages arguments, or award far less than the value of the Settlement's monetary consideration and cooperation, or nothing at all. Indeed, "'the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but

recovered no damages, or only negligible damages, at trial, or on appeal.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 118 (2d Cir. 2005).

In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 Civ. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). In contrast, the Settlement provides a significant, immediate, and certain monetary benefit to the Settlement Class. Plaintiff also receives the benefit of immediate cooperation from Settling Defendants to use in amending the Complaint and pursuing claims against Deutsche Bank.

### 5.    The Risks of Maintaining a Class Through Trial (*Grinnell* Factor #6)

Although the "risk of maintaining a class through trial is present in [every] class action," *Guippone v. BH S&B Holdings LLC*, No. 09-CV-1029 (CM), 2016 WL 5811888, at *7 (S.D.N.Y. Sept. 23, 2016), "this factor [nevertheless] weighs in favor of . . . settlement" where "it is likely that defendants would oppose class certification" if the case were to be litigated. *Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM), 2011 WL 6010211, at *8 (E.D.N.Y. Nov. 29, 2011). Plaintiff believes it will ultimately persuade the Court to certify a litigation class, but Defendants will advance substantial arguments in opposition.

### 6.    Settling Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor #7)

"'[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'" *Vitamin C*, 2012 WL 5289514, at *6. Here, Settling Defendants' ability to withstand a greater judgment is offset by the value of the cooperation agreed to in the Amended Stipulation. *In re Pressure Sensitive Labelstock*

*Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008); *see also Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*, No. C06-00089, ECF No. 43, at 7 (W.D. Wash. Sept. 22, 2006) (finding that settling defendant's "cooperation shall provide critical information and benefit to the class that is likely to far surpass the quantity, quality, and timeliness of the information that could be gleaned via the normal discovery process").

**7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Attendant Risks of Litigation (*Grinnell* Factors #8, 9)**

At preliminary approval, the range of reasonableness factor is satisfied when, as here, there are no obvious doubts as to the adequacy of the settlement amount.  *See, e.g., Yim v. Carey Limousine NY, Inc.*, No. 14-CV-5883(WFK)(JO), 2016 WL 1389598, at *4 (E.D.N.Y. Apr. 7, 2016) (granting preliminary approval of settlement without submission of "a specific number as [plaintiffs'] best possible recovery, particularly at this stage of preliminary approval, where the level of inquiry is more lenient than at final approval").[4]

Further, the Settlement Amount and cooperation achieved by the Settlement is similar to other recent settlements in antitrust bond cases in this District.  *See, e.g.*, *In re Mexican Gov't Bonds Antitrust Litig.* ("*MGB*"), No. 1:18-cv-04673(JPO), ECF No. 25 at 3 (S.D.N.Y. Dec. 16, 2020) (preliminarily approving settlement with JPMorgan and Barclays for $15,000,000 and

---

[4]    *See also Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 24-26 (D.D.C. 2011) (granting preliminary approval based on no obvious deficiency on adequacy of settlement amount but indicating additional information required for final approval); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 569 (N.D. Ill. 2011) (same); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107-08 (D.D.C. 2013) (preliminarily approving settlement where valuing monetary damages would be challenging).

cooperation); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) (preliminarily approving settlement with First Tennessee Bank for $14,500,000 and cooperation); *In re European Government Bonds Antitrust Litig.* ("*EGB*"), No. 1:19-cv-02601-VM, ECF No. 212 (S.D.N.Y. June 16, 2021) (preliminarily approving cooperation-only settlement with State Street); *EGB*, No. 1:19-cv-02601-VM, ECF No. 258 (S.D.N.Y. June 16, 2021) (preliminarily approving settlement with JPMorgan for $13,000,000 and cooperation ***after*** granting motion to dismiss claims against JPMorgan for failure to state a claim); *33-35 Green Pond Road Associates, LLC v. Bank Of America Corporation et al.*, No. 1:12-cv-05822-NRB, ECF No. 234 (S.D.N.Y. Apr. 30, 2020) (preliminarily approving cooperation-only settlement with Barclays in the USD LIBOR antitrust MDL).[5]

Indeed, the recent procedural history in *MGB* is strikingly similar.  Plaintiff and other representative pension funds filed *MGB* in 2018 after Mexican regulators announced an investigation into banks, including Deutsche Bank, for similar manipulation in the Mexican government bonds market.  Judge Oetken granted defendants' first motion to dismiss for failure to state a claim in its entirety in September 2019 and permitted plaintiffs to move for leave to amend the complaint.  *See MGB*, 412 F. Supp. 3d 380 (S.D.N.Y. 2019).  In November 2020, the court dismissed the amended complaint, again in full, for lack of personal jurisdiction.  *MGB*, No. 18-CV-2830 (JPO), 2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020).  Nevertheless, in December 2020, before the Court had ruled there was any plausible conspiracy, it preliminarily approved a

---

[5]    *See also Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS, ECF No. 441 (S.D.N.Y. July 17, 2020) (preliminarily approving $12,695,000 settlement with 14 of 16 named defendant bank families).

$15,000,000 (before attorneys' fees) and cooperation settlement with JPMorgan and Barclays. *MGB*, No. 1:18-cv-04673(JPO), ECF No. 25 (S.D.N.Y. Dec. 16, 2020). The court recently sustained plaintiffs' third amended complaint, based on the finding that the settlement cooperation provided by JPMorgan and Barclays – consisting of mostly bilateral chatroom transcripts in which traders exchanged confidential information and coordinated prices – constituted direct evidence of a price-fixing conspiracy. *MGB*, No. 18-CV-2830 (JPO), 2025 WL 104099, at *6-*7 (S.D.N.Y. Jan. 15, 2025).

Like *MGB*, Defendants' chatroom communications are not publicly available. If the Court preliminarily approves the Settlement, Plaintiff will obtain Settling Defendants' communications, which Plaintiff anticipates using to bolster its allegations of conspiracy. The value of these chatrooms is not speculative. The exchange of confidential information "constitute[s], at minimum, strong circumstantial evidence" of a price-fixing conspiracy. *EGB*, No. 1:19-cv-02601-VM, 2022 WL 768680, at *19 (S.D.N.Y. Mar. 14, 2022) (discussing State Street settlement cooperation).[6] Indeed, in other sovereign bond cases, courts deemed chat transcripts obtained as settlement cooperation to be direct evidence of price-fixing. *See MGB*, *supra*; *see also EGB*, No. 1:19-cv-02601-VM, 2023 WL 11646009, at *6-*8 (S.D.N.Y. Sept. 25, 2023) (holding settlement cooperation from Natixis and previously dismissed defendant JPMorgan constituted direct evidence of price-fixing conspiracy). Here, the cooperation and seven-figure Settlement Fund

---

[6]     *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789, 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) ("the sharing of information between competitors constitutes circumstantial evidence of an antitrust conspiracy and is sufficient at the pleading stage.").

"confer[] real and substantial benefits upon the Class." *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (recognizing value of early cooperation); *Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702 (same); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (same).

Moreover, under joint and several liability, Plaintiff can seek the full amount of damages on behalf of the Class from the non-settling Defendant, Deutsche Bank, and the Stipulation at ¶3.5 specifically reserves this right. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058-JST, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (noting the right to seek entire damages from non-settling defendants "provides increased value . . . by creating added incentive for the remaining defendants to settle or allowing greater recovery for the Plaintiffs at trial").

In light of the risk of dismissal of the Action in the absence of the Settlement, and the monetary amount obtained from Settling Defendants, this Settlement is reasonable.

## C.  The Remaining Rule 23(e)(2) Factors Support Preliminary Approval

### 1.    Rule 23(e)(2)(A) – Plaintiff and Plaintiff's Counsel Have Adequately Represented the Settlement Class

Plaintiff shares the same interest as the Settlement Class in prosecuting this Action to ensure the greatest recovery from Settling Defendants. Plaintiff is part of the Settlement Class and suffered the same injuries as other Class Members – *i.e.*, monetary losses when they were overcharged or underpaid in their transactions with Defendants in Gilt Bonds. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members'"). Plaintiff has played an active role in this case's development, prosecution, and settlement. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (stating that a class representative "must have an interest in vigorously pursuing the claims of the class and must have no interests

antagonistic to the interests of other class members"). Thus, Plaintiff is an adequate representative of the Settlement Class and should be appointed as class representative for settlement purposes. Further, Plaintiff's Counsel have demonstrated they are qualified, experienced, and able to conduct the litigation. *See* Section II.C., *infra*.

> **2.    Rule 23(e)(2)(C) – the Consideration Provided by Settling Defendants is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

Plaintiff next addresses the Rule 23(e)(2)(C) factors that do not overlap with the *Grinnell* factors and have not been previously addressed. The remaining Rule 23(e)(2)(C) factors support preliminarily approving the Settlement.

> **a.    Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(C)(iii) – Effectiveness of Any Proposed Method of Distributing Relief to the Class and the Terms of Any Proposed Award of Attorneys' Fees**

Rule 23(e)(2)(C)(iii) considers the "terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C)(iii). Unlike similarly valued settlements in this district – *EGB*, *MGB*, and *GSE* – Plaintiff's Counsel is not requesting any award of attorneys' fees in connection with the $12 million settlement and will seek only reimbursement of certain Litigation Expenses, largely expert and consultant fees capped at $500,000. This fact strongly weighs in favor of approval.

Rule 23(e)(2)(C)(ii) requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). Here, Plaintiff's Counsel developed the Distribution Plan based on their experience prosecuting bond manipulation and financial services antitrust cases. Transaction volume will be weighted according to trade characteristics, such as instrument type and duration, to generate the amount of each Claimant's potential claim. For example, bonds of

longer duration are impacted more by price moves and will receive a higher weighting, all else held equal.[7]  The Net Settlement Fund will be disbursed on a *pro rata* basis according to an adjusted weighting of each Authorized Claimant's Gilt Bond Transactions.

This method for distributing the Net Settlement Fund has been approved in analogous cases concerning bond manipulation.  *See GSE*, 414 F. Supp. 3d at 694-95 (approving similar distribution plan for settlements resolving antitrust claims relating to bonds issued by government sponsored entities); *EGB*, No. 1:19-cv-02601-VM, ECF No. 529 (S.D.N.Y. Dec. 9, 2024) (approving similar distribution plan for settlements resolving antitrust claims relating to bonds issued by European governments).

### b.    Rule 23(e)(2)(C)(iv) – Any Agreement Required to Be Identified Under Rule 23(e)(3)

The Settlement discloses the existence of a Supplemental Agreement that provides Settling Defendants with a qualified right to terminate the Settlement.  Stipulation, ¶10.6.  This type of agreement, often referred to as a "blow" provision, is common in class action settlements.  *See, e.g.*, *GSE*, 414 F. Supp. 3d at 696 (finding, after review, that a similar blow provision "has no bearing on the [settlement] approval analysis").

---

[7]    The distribution formulae will be posted to the settlement website at least thirty days prior to the objection and opt-out deadlines.  *See* Coughlin Decl. Ex. 4, at ¶13.  Changes, if any, to the Distribution Plan based on newly available data or information will be posted promptly to the Settlement Website, and Settlement Class Members will be encouraged to check the website for updates.

### 3.    Rule 23(e)(2)(D) – the Settlement Treats Class Members Equitably Relative to Each Other

This Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." FED. R. CIV. P. 23 advisory committee's note to 2018 amendment.  The releases treat all Class Members equitably relative to one another.  Subject to Court approval, all Settlement Class Members will be giving Settling Defendants an identical release running to the identical factual predicate of the Action.  Stipulation, ¶¶3-10.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.  The Settlement Class Meets the Requirements of Rule 23(a)

### 1.    Class Members Are So Numerous that Joinder Is Impracticable

In cases involving widely traded instruments such as this one, numerosity is readily satisfied.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (stating that courts presume numerosity for classes of 40 or more members).

### 2.    There Are Questions of Law and Fact Common to All Class Members

Commonality is regularly found in antitrust cases because questions of the existence, nature, and scope of an antitrust conspiracy are common.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 590 (S.D.N.Y. 2018) (stating that "the existence of a conspiracy is a common question").

### 3.    Plaintiff's Claims Are Typical of Those of the Settlement Class

The standard for typicality is "'not highly demanding,'" *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is readily satisfied in price-fixing claims which aim to prove

"a conspiracy, its effectuation, and damages therefrom." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (collecting cases).  Plaintiff's claims are typical of the Settlement Class's claims because Plaintiff alleges the same unlawful course of conduct harmed all Class Members.  *See In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y. 2010) (stating that "the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system'").  Any differences that may exist as to the amount of injury suffered by each Settlement Class Member does not preclude a finding of typicality.  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998).

### 4.    The Settlement Class Is Fairly and Adequately Represented

As discussed previously at Section I.C.1, *supra*, in the Rule 23(e)(2)(A) analysis, Plaintiff and Plaintiff's Counsel have fairly and adequately represented the Settlement Class.

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

### 1.    Common Questions of Law and Fact Predominate

Predominance is "'a test readily met in certain cases alleging . . . violations of the antitrust laws.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *In re Elec. Books Antitrust Litig.*, No. 11-MD-2293-DLC, 2014 WL 1282293, at *14 (S.D.N.Y. Mar. 28, 2014) ("'where plaintiffs were allegedly aggrieved by a single policy of the defendant[], and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited'") (quoting *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010)).

Here, each element of the Plaintiff's antitrust claims – collusion, causation and impact, and damages – would be proven through common evidence.  *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (stating that in price-fixing conspiracy cases, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of

the conspiracy are the prime issues in the case and are common across the class") (citing cases). The existence and scope of Defendants' conspiracy to fix prices for Gilt Bonds sold to U.S. investors can be established by common evidence, such as chat room communications and deposition testimony of Defendants' traders. None of this proof will vary across Class Members. Rather, proof of the conspiracy "will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members." *In re Vitamins Antitrust Litig*., 209 F.R.D. 251, 264 (D.D.C. 2002). Further, classwide impact, causation, and damages can also be demonstrated using common evidence, including through expert testimony and modeling that relies on Defendants' transaction data, which is common to all members of the Settlement Class and requires no individualized inquiries.

### 2.    A Class Action Is the Superior Method for Resolving This Case

Class litigation is superior in actions where, as here, it would be unduly costly for Class Members to pursue litigation on their own. *See Elec. Books*, 2014 WL 1282293, at *23 (citing *Amchem*, 521 U.S. at 617); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The ***realistic*** alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). Additionally, Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004). In the settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620; *In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d 229, 239, 240 (2d Cir. 2012).

### C. The Court Should Appoint Plaintiff's Counsel as Counsel for the Settlement Class

"An order that certifies a class action . . . must appoint class counsel under Rule 23(g)." FED. R. CIV. P. 23(c)(1)(B) (considering the factors identified in Rule 23(g)(1)(A)(i)-(iv)). Scott+Scott Attorneys at Law LLP has diligently pursued the claims in this Action. ¶1. No other firms have filed follow-on actions. Scott+Scott has competently undertaken the responsibilities of litigating this complex class action.

## III. NOTICE TO THE SETTLEMENT CLASS

Plaintiff's Counsel has selected A.B. Data, Ltd. ("A.B. Data") as Claims Administrator and submit for the Court's consideration a notice plan to advise the class of the Settlement (the "Notice Plan"). *See* Declaration of Elaine Pang in Support of Motion for Preliminary Approval of Settlement ("Pang Decl."), Ex. C. The Notice Plan as set forth in the Pang Declaration satisfies the requirements of Rule 23 and due process, which require that the settlement class receive "adequate" notice of a class action settlement. *See Wal-Mart Stores*, 396 F.3d at 113-14. For a class certified under Rule 23(b)(3), notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

Notice cannot commence until Defendants provide the last known addresses of their counterparties. Plaintiff proposes that Notice commence within 30 days of receipt of all counterparty data from Defendants. Settling Defendants have begun the process of collecting reasonably available data. Deutsche Bank has not responded to Plaintiff's request for class member information.

Notice will be distributed to Class Members through various means. ***First***, the Notice Plan contains a direct mail component that involves sending the Notice via First-Class Mail (or

its equivalent), postage prepaid, to potential Settlement Class Members identified by Defendants as counterparties that transacted in Gilt Bonds. Defendants will provide the Claims Administrator with information sufficient to identify their direct Gilt Bond counterparties. Alternatively, Defendants may retain their own notice agent to effectuate notice in compliance with foreign data privacy laws. Pang Decl., ¶6.

*Second*, direct-mail notice will be sent through "nominees," which include brokerage firms, banks, institutions, and other third parties that purchase or sell Gilt Bonds on behalf of their investor clients. Pang Decl., ¶¶6-7. A.B. Data maintains a proprietary database with names and mailing addresses of approximately 4,000 banks, brokers, and other nominees (the "Nominee List"). *Id*., ¶7. The Nominee List also includes third-party claim filers and entities that have requested notification in every case involving publicly-traded securities. *Id*. Notices will be mailed to the Nominee List contemporaneously with the mailing of notice to Settlement Class Members identified by Defendants (*id*., ¶8), satisfying the demand for reasonableness under Rule 23(c)(2)(B). *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) ("By sending notice to all persons who could be identified by reasonable efforts–and requesting Nominees provide the names of those that could not–Plaintiffs met the requirements of Rules 23(c), 23(e), and due process.").

*Third*, banner ads will appear on various websites, including *Investor's Business Daily*, *Technical Analysis of Stocks & Commodities*, *Financial Times*, *The New York Times*, *The Wall Street Journal*, and/or other publications. Pang Decl., ¶15. In addition, banner ads will appear on targeted financial websites such as marketplace.com, cnbc.com, finance.yahoo.com, and

hundreds of others.  *Id.*, ¶16.  Banner and social media ads will also appear on Google Display Network, LinkedIn, and other programmatic digital platforms.  *Id.*, ¶14.

**Fourth**, sponsored search listings will be placed through the Google search engine.  When identified target phrases and keywords are used in searches on Google, links to the settlement website will appear at the top of the search result pages.  A press release will be distributed via *PR Newswire's* US1 Newsline.  The press release will reach traditional media outlets (television, radio, newspapers, magazines), news websites, and journalists across the United States.  *Id.*, ¶18. News about the proposed Settlement will also be broadcast to the news media via X (formerly Twitter).  *Id.*, ¶19.  It will be tweeted from *PR Newswire* and A.B. Data's X accounts to thousands of media outlets, journalists, and other followers.  *Id.*

**Fifth**, A.B. Data will establish and maintain a case-specific toll-free telephone number to address potential Class Member inquiries.  *Id.*, ¶20.  The toll-free telephone number will be equipped with an automated interactive voice response system.  If callers need further help, they will have an option to speak with a live operator during business hours.  *Id.*  Plaintiff's Counsel will also be available to answer questions and assist Class Members as needed.

**Finally**, the Claims Administrator will maintain a settlement website, www.GiltBondSettlement.com, that will serve as a source for Class Members to obtain information regarding the Settlement.  From the settlement website, Class Members can review and obtain: (i) the Notice and summary notice; (ii) the Stipulation; and (iii) key pleadings and Court orders.

This type of multi-faceted notice program, which combines individual notice and electronic notice, has routinely been approved by federal courts in complex class actions, including those prosecuted in this Circuit.  *See, e.g., Facebook*, 343 F. Supp. 3d at 411 (rejecting objection and

finding that direct mail notice, including nominee notice, and alternate notice over the *PR Newswire* "met the requirements of Rules 23(c), 23(e), and due process"); *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (holding that notice of the proposed settlement of this case was reasonable where notice was mailed to class members and published electronically on the *PR Newswire*); *EGB*, No. 1:19-cv-02601-VM, ECF No. 315 (S.D.N.Y. Nov. 17, 2022), ¶¶4-6; *EGB*, No. 1:19-cv-02601-VM, ECF No. 485 (S.D.N.Y. Apr. 19, 2024), ¶7 (approving substantially similar notice plan).  Thus, Plaintiff respectfully requests that the Court approve the proposed Notice Plan and appoint A.B. Data as Claims Administrator.

As additional consideration for the release of claims, Settling Defendants have agreed to pay Notice and Administration Costs up to $1,000,000.  To the extent such costs exceed this amount, Plaintiff will apply to the Court to pay these costs from the Settlement Fund.  Stipulation, ¶6.3.

## IV.    DEUTSCHE BANK'S POSITION STATEMENT IS MOOT AND MERITLESS

On January 15, 2025, Deutsche Bank filed a position statement concerning the original cooperation-only settlement proposed between Plaintiff and Settling Defendants.  ECF No. 110. Even with respect to the prior settlement, Deutsche Bank fails to rebut its procedural and substantive fairness, but in any event those concerns are now moot in light of the Parties' amended terms.

***First***, as Deutsche Bank acknowledges (*id.* at 1), it is neither a Settlement Class Member nor a party to the Settlement, so it has no standing to object.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 499 (S.D.N.Y. 2018) (brackets in original) ("'[o]nly class members have standing to object to the Settlement of a class action.'"); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) ("'[n]onparties to a settlement generally do not have standing to object'" absent a showing

of prejudice). The proper place to adjudicate the contents and merits of the cooperation Settling Defendants will provide – along with the full corpus of allegations Plaintiff has developed since June 2023 – is in subsequent motion practice.

*Second*, Deutsche Bank fails to distinguish the State Street settlement in *In re: European Government Bonds Antitrust Litigation*, No. 19-cv-02601. Selectively quoting the preliminary approval papers in that action, Deutsche Bank emphasizes State Street had less than 1% market share in the relevant market. ECF No. 110 at 2. Deutsche Bank omits that State Street's "limited participation in the primary and secondary market" owed to the fact that State Street had only maintained the relevant trading desk and, therefore, could only participate in the conspiracy "for one year." No. 19-cv-02601, ECF No. 208, at 14. Thus, State Street's culpability was comparable to 3 of the 4 Settling Defendant banks in this case, which the Court emphasized participated in the offending cartel conduct for approximately one year. *See* ECF No. 87, at 25-26. In any event, with the addition of the seven-figure Settlement Fund, Deutsche Bank cannot distinguish the Settlement, as amended, from the numerous comparable settlements courts in this District have approved. *See infra*, §I(B)(7).

*Third*, at the conference on January 8, 2025, the Court previously found relevant that Deutsche Bank took no position, inferring that it was "apparently unconcerned with what might happen with the disclosure of the proposed documents." Hr'g Tr. at 7:7:4-6. Deutsche Bank's position statement in opposition to the Settlement now falsifies that inference and, under the Court's prior reasoning, counsels in favor of preliminary approval.

## CONCLUSION

Plaintiff respectfully requests that the Court enter an order preliminarily approving the Settlement, approving the Notice Plan and setting a schedule for a Fairness Hearing, and

preliminarily approving the Distribution Plan as set forth in the proposed Preliminary Approval Order.

Dated: January 22, 2025

SCOTT+SCOTT ATTORNEYS AT LAW LLP

*s/ Patrick Coughlin*
PATRICK COUGHLIN
CARMEN MEDICI (*pro hac vice*)
FATIMA BRIZUELA
PATRICK J. RODRIGUEZ
DANIEL J. BROCKWELL (*pro hac vice*)
JOHN SMALLWOOD (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com
dbrockwell@scott-scott.com
jsmallwood@scott-scott.com
prodriguez@scott-scott.com


SCOTT+SCOTT ATTORNEYS AT LAW LLP
KRISTEN M. ANDERSON
DONALD A. BROGGI
MICHELLE E. CONSTON
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
kanderson@scott-scott.com
dbroggi@scott-scott.com
mconston@scott-scott.com


SCOTT+SCOTT ATTORNEYS AT LAW LLP
DAVID R. SCOTT
AMANDA LAWRENCE
156 South Main Street
P.O. Box 192

24

Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com

*Counsel for Plaintiff Oklahoma Firefighters
Pension and Retirement System, and Proposed
Class Counsel*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this memorandum of law contains 6,783 words in compliance with Section II (D) of the Individual Practices of Judge John G. Koeltl.

DATED: January 22, 2025

*s/ Patrick Coughlin*
PATRICK COUGHLIN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*s/ Patrick Coughlin*
PATRICK COUGHLIN
